STATE OF CONNECTICUT *v.* JOHN R.
BURNAKA ET AL.
(AC 19835)

Foti, Zarella and Dupont, Js.

---

[15] See footnote 5.

46

Argued September 25—officially released December 5, 2000

*Steven P. Kulas*, with whom, on the brief, was *Prescott W. May*, for the appellant (named defendant).

*Gary G. Williams*, assistant attorney general, with whom were *Edward F. Reynolds, Jr.*, assistant attorney general, and, on the brief, *Richard Blumenthal*, attorney general, for the appellee (plaintiff).

*Opinion*

DUPONT, J. The defendant, John R. Burnaka, appeals from the trial court's granting of the motion for summary judgment filed by the plaintiff, the state of Con-

necticut,[1] in this interpleader action. On appeal, the defendant[2] claims that the court improperly (1) granted summary judgment without allowing him to present evidence of a prior settlement between the parties and (2) rendered judgment in favor of the plaintiff without deciding whether the prior settlement barred the state from recovery. We affirm the judgment of the trial court.

The facts giving rise to this appeal are as follows. The defendant filed a personal injury action in June, 1994. In May, 1996, the plaintiff learned of the action and notified the defendant of his obligation, should he recover money in that action, to reimburse the plaintiff for aid to families with dependent children that it had paid out for the defendant's minor child. The plaintiff also informed the defendant of its intention to assert a statutory lien on any moneys recovered in that action.

Pursuant to General Statutes (Rev. to 1995) §§ 17b-93 (a)[3] and 17b-94 (a),[4] the plaintiff thereafter placed a

[1] More specifically, in this opinion, the state of Connecticut refers to the department of administrative services acting through the bureau of collection services.

[2] The plaintiff named two defendants in the underlying action, Burnaka as a claimant to the disputed fund and Prescott W. May, an attorney, as the stakeholder. May's law firm, May & Stanek, P.C., represents Burnaka in this appeal. Unless otherwise stated, we refer in this opinion to Burnaka as the defendant.

[3] General Statutes (Rev. to 1995) § 17b-93 (a) provides in relevant part that "the parents of an aid to dependent children beneficiary shall be liable to repay, subject to the provisions of said section 17b-94, to the state the full amount of any such aid paid to or in behalf of . . . his child or children. The state of Connecticut shall have a lien against property of any kind or interest in any property, estate or claim of any kind of the parents of an aid to dependent children beneficiary, in addition and not in substitution of its claim, for amounts owing under any order for support of any court or any family support magistrate, including any arrearage under such order . . . ."

[4] General Statutes (Rev. to 1995) § 17b-94 (a) provides in relevant part: "In the case of causes of action . . . of a parent of a beneficiary of the aid to families with dependent children program . . . the claim of the state shall be a lien against the proceeds therefrom in the amount of the assistance paid or fifty per cent of the proceeds received by such beneficiary or such parent after payment of all expenses connected with the cause of action,

statutory lien on the net proceeds derived from the defendant's personal injury action. The defendant challenged the validity and amount of the plaintiff's lien, and the department of social services' office of administrative hearings conducted a hearing on February 10, 1997. The defendant received a full hearing, during which he and the plaintiff had the opportunity to present and cross-examine witnesses and to introduce documentary evidence. Following the proceeding, the hearing officer issued a notice of decision dated March 25, 1997. The hearing officer found that the plaintiff validly held an enforceable lien in the amount of $10,308.25.[5]

Section 4-183 of the Uniform Administrative Procedure Act, General Statutes § 4-166 et seq., grants the defendant the right to appeal from the hearing officer's decision, a right the defendant exercised on May 27, 1997. The defendant's appeal, however, was untimely and, on June 26, 1997, he withdrew it when confronted with a motion to dismiss.

The defendant settled his personal injury action on December 12, 1997, for $89,500, the net proceeds of which totaled $51,831.48. The amount of the statutory lien, $10,308.25,[6] remained in an account at May & Stanek, P.C., the law firm of the defendant's personal injury attorney, Prescott W. May,[7] and the defendant received the balance of the proceeds.

whichever is less, for repayment under said section 17b-93, and shall have priority over all other claims except attorney's fees for said causes, expenses of suit . . . and such claim shall consist of the total assistance repayment for which claim may be made under [said programs] . . . ."

[5] The hearing officer decreased the amount of the statutory lien from $13,347.97 to $10,308.25. A minor discrepancy exists as to the amount of the lien found by the hearing officer. Some documents list the amount as $10,308.72, while others value it at $10,308.25. We use the latter figure for consistency purposes and due to the negligible difference.

[6] That amount satisfies the statutory prescription that the state's claim shall equal the lesser of the amount of assistance paid or 50 percent of the proceeds.

[7] May, the stakeholder, controls the account in which the disputed money was deposited, and the plaintiff correctly named him as a defendant in the

After the defendant provided the plaintiff with an accounting of the settlement proceeds, the plaintiff asserted entitlement to full payment of its statutory lien. The defendant's refusal to authorize the disbursement prompted the plaintiff to initiate an interpleader action. On March 23, 1998, the plaintiff filed a two count complaint for interpleader. The complaint's first count, against Burnaka and May, alleges that the administrative agency decision became a final and binding decision upon expiration of the allotted time to take an appeal. It further alleges that pursuant to §§ 17b-93 and 17b-94, the plaintiff possesses a valid claim to the money in the account. According to the complaint, the plaintiff believed that the defendant also claimed entitlement to the settlement proceeds. In the second count, against May only, the plaintiff alleged that its numerous attempts to contact May proved unavailing and that May had not filed an interpleader action or taken other legal action to effect a lawful disbursement of the settlement proceeds.[8]

On November 9, 1998, the plaintiff moved for summary judgment on count one as a matter of law, and for summary judgment as to both liability and damages, claiming that no genuine issue of material fact existed as to the validity or amount of the lien. In support of its motion for summary judgment, the plaintiff filed an affidavit of Peter Pappas, an investigator in the department of administrative services' fiscal and administrative resources-collections division. The affidavit stated

interpleader action. May disclaimed any personal interest in the interpleader fund on May 24, 1999. He is therefore not personally appealing from the granting of summary judgment, but is an attorney in the law firm representing the defendant.

[8] When the stakeholder has not initiated an action of interpleader, a plaintiff who is not the possessor of the property but who claims an interest in the property held by the stakeholder may institute an action for interpleader. *Millman* v. *Paige*, 55 Conn. App. 238, 241, 738 A.2d 737 (1999); see General Statutes § 52-484.

that Pappas had sufficient knowledge of the books and records relating to the moneys the defendant owed to the plaintiff. In his affidavit, Pappas stated that the amount owed totaled $10,308.25. The plaintiff submitted a second affidavit executed by Pappas that stated that the plaintiff had continued to provide assistance to the defendant's daughter since June 14, 1994, the effective date of a support order modification and agreement entered into by the plaintiff and defendant. The affidavit identified the disbursement dates and the specific amounts the plaintiff had provided in assistance for the defendant's child between June, 14, 1994, and February 1, 1997.[9]

The defendant submitted two opposing affidavits. Together, they state that the defendant entered into an agreement with the plaintiff on July 31, 1994,[10] that discharged him from any liability, present and future, owed to the plaintiff. That liability release, according to the defendant's affidavits, specifically contemplated and included future welfare liability under §§ 17b-93 and 17b-94. The court granted the plaintiff's motion for summary judgment on January 8, 1999, solely on the issue of liability. The court then requested each party to submit a statement of claim.

On January 28, 1999, the plaintiff filed a motion for an interlocutory judgment of interpleader, which the court granted on February 8, 1999.[11] On March 4, 1999,

---

[9] February 1, 1997, represents the last payment date prior to the February 10, 1997 administrative hearing.

[10] That date corresponds to the date the family support magistrate issued an order and finding with regard to the agreement. The Superior Court approved the modification order and finding on August 2, 1994. The effective date of the order is June 14, 1994.

[11] An interpleader proceeding typically involves two distinct parts, the first of which is an interlocutory judgment of interpleader. *Yankee Millwork Sash & Door Co.* v. *Bienkowski*, 43 Conn. App. 471, 473, 683 A.2d 743 (1996). An interlocutory judgment of interpleader, which determines whether interpleader lies, traditionally precedes adjudication of the claims. An unorthodox sequence of events is not, however, fatal. *General Accident Group* v. *Gagliardi*, 593 F. Sup. 1080, 1087 (D. Conn. 1984), aff'd, 767 F.2d 907 (2d Cir. 1985).

the plaintiff filed its statement of claim, which restated the counts of the original interpleader complaint. The defendant admitted thirteen of fourteen paragraphs in the plaintiff's statement of claim. In his own statement, the defendant reasserted his contention that he and the plaintiff had entered into an agreement relieving him of all liability to the plaintiff for repayments of any welfare liens. The plaintiff's answer denied those allegations and asserted a special defense that the doctrines of collateral estoppel and res judicata barred the defendant from asserting those claims.

After a hearing in damages, the court rendered judgment on July 6, 1999. It found the issues for the plaintiff and ordered the following: "Whereupon it is adjudged that the plaintiff recover $71.56 costs and $2000 attorney's fees. The balance of said funds, including any interest thereon, shall be paid to the state. The stakeholder, Prescott W. May, is ordered to make such disbursements as stated."[12] This appeal followed.

The defendant first claims that the court improperly granted summary judgment in favor of the plaintiff without allowing him to raise the settlement between the plaintiff and the defendant as a defense to the summary judgment motion. The defendant argues that the court should have heard evidence about the settlement because the hearing officer did not have jurisdiction to hear the defendant's damages claim and asserts that the doctrine of exhaustion of administrative remedies does not apply to the present case.

The plaintiff's November 9, 1998 motion for summary judgment appears to overlook the need for an interlocutory judgment of interpleader and sought a determination of liability, namely that the plaintiff is due the fund, and of damages in a particular amount.

[12] The transcripts reveal that the court and the parties properly recognized that, because the stakeholder's disbursement cannot exceed the amount of the stake, the judgment including attorney's fees and costs increased the amount of the defendant's ultimate liability to the plaintiff.

The plaintiff responds that the court appropriately granted summary judgment and argues that the defendant raises issues on appeal that he never presented to the trial court and that it, therefore, never had the opportunity to decide them. Moreover, the plaintiff claims that the court, in granting summary judgment, properly invoked the doctrine of administrative res judicata, not the doctrine of exhaustion of administrative remedies.

This court's review of the granting of a summary judgment motion is well settled. Practice Book § 17-49 provides that the "judgment sought shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Thus, a trial court examines the evidence, draws inferences in favor of the nonmoving party and determines whether the same facts would entitle the moving party to a directed verdict. *Connell* v. *Colwell*, 214 Conn. 242, 246–47, 571 A.2d 116 (1990). On appeal, this court must determine whether any genuine issue of material fact existed and, therefore, whether the moving party was entitled to a judgment as a matter of law. *Aetna Casualty & Surety Co.* v. *Jones*, 220 Conn. 285, 292, 596 A.2d 414 (1991). This review involves a question of law and thus our review is plenary. *Vogel* v. *Maimonides Academy of Western Connecticut, Inc.*, 58 Conn. App. 624, 628, 754 A.2d 824 (2000); see *Davis* v. *Norwich*, 232 Conn. 311, 317, 654 A.2d 1221 (1995).

The nature of the agreement between the parties on which the defendant relies so heavily determines the propriety of the granting of summary judgment. To that end, we recite the following additional facts. The plaintiff ordered the defendant to pay weekly child support in the amount of $65 for his minor daughter. A family support magistrate conducted a child support modifica-

tion hearing on July 13, 1994, in which the plaintiff and the defendant had the benefit of counsel. The magistrate modified the support order from $65 to zero and determined that the defendant owed no money in arrearage to the plaintiff as of June 14, 1994. The magistrate ordered those modifications pursuant to an agreement between the parties. The magistrate stated that "[the defendant] entered into an agreement with [the plaintiff] that the current support order should be modified and that the arrearage claimed by the [plaintiff] should be vacated as [the defendant] has proved that it has already been collected by the [plaintiff]."

The defendant argues that his two affidavits, in which he reemphasizes that the intention of the modification was to discharge him from any present and *future* liability to the plaintiff, and the July, 1994 modification by the magistrate, raise a sufficient question of triable fact so as to preclude summary judgment. He contends that this evidence demonstrates that "at the very least, a question of fact existed as to the extent and meaning of a settlement between him and the [plaintiff]." We disagree.

The defendant's argument represents an attempt to relitigate an issue that the doctrines of collateral estoppel and res judicata prohibit. An examination of the record reveals that the defendant has previously, and unsuccessfully, challenged the validity of the lien under the identical theory he posits today, namely that the settlement discharged him from future liability to the plaintiff. He tested its validity during the February, 1997 administrative hearing he requested.

The statement of the issue recited in the hearing officer's notice of decision perfectly illustrates this prior challenge: "This hearing decision is to address whether the state has the authority to place a lien on the [defendant's] cause of action, and whether the amount of the

identified lien is correct." The sentence beginning the notice of decision's discussion wholly eliminates any remaining doubt whether the defendant contested the lien's validity and amount. "The [defendant's] representative has argued that based on the August 2, 1994 modification, the [defendant] no longer had any liability for repaying the state for public assistance given to his daughter."

We see no difference between the argument before the hearing officer and the argument made to this court. Moreover, we note that no question or ambiguity exists as to the hearing officer's findings and conclusion: "The state has the authority to place a lien on the [defendant's] cause of action. Additionally, $10,308.25, the revised amount of the balance is correct."

As with the judgment of a court, a valid and final decision rendered by an administrative tribunal bars relitigation of the same issues. *New England Rehabilitation Hospital of Hartford, Inc.* v. *Commission on Hospitals & Health Care*, 226 Conn. 105, 129, 627 A.2d 1257 (1993). Validity of an administrative decision hinges primarily on access to judicial review. *Convalescent Center of Bloomfield, Inc.* v. *Dept. of Income Maintenance*, 208 Conn. 187, 195–98, 544 A.2d 604 (1988). In the present case, the defendant indisputably had access to judicial review. Indeed, he sought such review, but subsequently withdrew his appeal. Expiration of the statutory time limit to take an appeal from the administrative decision converted that decision into a final and binding judgment with the same preclusive effect as a judicial decision.

The court properly determined that the defendant's arguments in opposition to the motion for summary judgment sought to skirt the preclusive effect of the administrative decision and, therefore, the court properly disregarded them as a valid defense to the motion.

The hearing officer's decision, validating the lien and determining the appropriate amount, constitutes a former judgment on the merits between the two parties and estops the defendant from raising the issue here. The court correctly found that "the prior action involved the same parties, resulted in a final judgment on the merits, involved the same claim, and [the defendant had] an adequate opportunity to litigate his defense . . . [and therefore] his settlement agreement defense is barred under the doctrine of res judicata."

We treat the defendant's claim that he need not have exhausted administrative remedies summarily. The court did not rely on that doctrine. Instead, the underlying case concerns administrative res judicata, that is, the doctrine that valid, final administrative decisions are entitled to the same rules of res judicata as court judgments. *Busconi* v. *Dighello*, 39 Conn. App. 753, 768, 668 A.2d 716 (1995), cert. denied, 236 Conn. 903, 670 A.2d 321 (1996).

The defendant also claims that at the administrative hearing in 1997, he sought positive relief from the state, including damages, because the state had breached a prior settlement agreement. We have no evidence from either that hearing or in this interpleader action that the defendant made such a claim, and we cannot, therefore, consider it. For the foregoing reasons, we affirm the judgment of the trial court.

The judgment is affirmed.

In this opinion the other judges concurred.