### HEDDA SMULEWICZ-ZUCKER *v.* DAVID ZUCKER
### (AC 26824)

DiPentima, Rogers and Pellegrino, Js.

Argued September 13—officially released November 14, 2006

*Norman A. Pattis*, for the appellant (plaintiff).

*Barbara M. Schellenberg*, with whom were *Richard L. Albrecht* and, on the brief, *Courtney A. George*, for the appellee (defendant).

*Opinion*

PELLEGRINO, J. The plaintiff, Hedda Smulewicz-Zucker, appeals from the summary judgment rendered

in favor of the defendant, David Zucker, her former husband. The plaintiff claims that the trial court improperly (1) refused to apply the continuing course of conduct doctrine and instead applied the statute of limitations embodied in General Statutes § 52-577, pursuant to which the court ruled that all conduct of the defendant that took place prior to November 20, 1998, was time barred, (2) concluded as a matter of law that the conduct of the defendant was not sufficiently extreme and outrageous as to give rise to a cause of action for intentional infliction of emotional distress and (3) concluded that the plaintiff was collaterally estopped from bringing this action. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to this appeal. The plaintiff and the defendant were married on August 12, 1973. They have two children born of their marriage, a son on December 8, 1983, and a daughter on June 28, 1985. On October 2, 1994, the plaintiff filed a complaint seeking dissolution of the marriage. On March 13, 1998, the parties appeared before the court, *Gordon, J.*, and entered into a stipulation calling for joint custody of the minor children and related issues involving the care and visitation of their children. This agreement also provided that the defendant would be the final decision maker in connection with the children's education.

On October 5, 1998, the parties appeared and were heard at the final hearing scheduled for the dissolution of their marriage. After that hearing, Judge Gordon dissolved the marriage, incorporated by reference the terms of the custody agreement of March 13, 1998, and made financial orders of alimony, child support and a division of the parties' assets. The defendant appealed from this judgment. Thereafter, the plaintiff filed a motion to modify the custody order. That motion was scheduled and heard on November 20, 1998, before

Judge Gordon. On that date, the parties agreed on a global settlement, including the custody issues raised by the plaintiff in her postjudgment motion and the financial issues that were the subject of the defendant's appeal. As part of this settlement, the plaintiff gained sole custody of the children, waived the defendant's obligation of child support and agreed to accept a $1,000,050 lump sum alimony award payable bimonthly over a ten year period, in lieu of all other financial assets awarded to her in the judgment of October 5, 1998. The defendant agreed to withdraw his appeal.

Before Judge Gordon accepted the settlement on November 20, 1998, she conducted, on that date, a comprehensive canvass of both parties to determine whether they understood the agreement, were satisfied with its terms and whether they had entered into the agreement willingly. Although the plaintiff was crying prior to the canvass, she told Judge Gordon that she was crying out of happiness. She assured Judge Gordon that she was happy with the agreement, had had enough time to discuss it with her lawyer and that she was not forced, threatened or intimidated in any way.

On November 20, 2001, the plaintiff filed a complaint against the defendant, claiming that from October, 1994, through November, 1998, the defendant intentionally engaged in extreme and outrageous conduct against both her and the children for the purpose of causing the plaintiff severe emotional distress. The plaintiff alleged that the defendant's intentional infliction of emotional distress culminated on November 20, 1998, during the pretrial conference, when the defendant, through his attorney, suggested sending the parties' son to a boarding school. According to the plaintiff, the defendant's suggestion was a threat to be carried out if she did not cede certain portions of the financial assets that the family court previously awarded to her. She claimed

that this caused her to suffer an anxiety attack and required her to leave the courtroom.

The defendant filed a motion for summary judgment on November 18, 2004, seeking to dismiss the plaintiff's complaint on the grounds that any alleged acts that took place prior to November 20, 1998, were time barred by § 52-577 and that the remaining acts alleged by the plaintiff were insufficient to establish a cause of action for intentional infliction of emotional distress. The court, *Stevens, J.*, rendered summary judgment in favor of the defendant on June 28, 2005. This appeal followed.

I

The plaintiff first claims that the court improperly concluded that the continuing course of conduct doctrine was inapplicable and that an action based on any events prior to November 20, 1998, was barred by the three year statute of limitations provided by § 52-577. That provision states that "[n]o action founded upon a tort shall be brought but within three years from the date of the act or omission complained of." Specifically, the plaintiff argues that the continuing course of conduct doctrine applies to toll the statutory limitations period because of the "fiduciary like relationship that exists between a husband and wife," and because the defendant abused this position when he continually "harassed, threatened and manipulated" the children for years, which has caused her continued emotional distress. We are not persuaded.

"The question of whether a party's claim is barred by the statute of limitations is a question of law, which this court reviews de novo." *Giulietti* v. *Giulietti*, 65 Conn. App. 813, 833, 784 A.2d 905, cert. denied, 258 Conn. 946, 947, 788 A.2d 95, 96, 97 (2001). Additionally, "before the [continuing course of duty] doctrine can be applied, a duty must first be found to have existed. The existence of a duty is a question of law and only if such

a duty is found to exist does the trier of fact then determine whether the defendant violated that duty in the particular situation at hand. . . . Our view of that legal question is plenary, and the plaintiff's claim rises or falls on whether such a continuing duty exists." (Citation omitted; internal quotation marks omitted.) *Golden* v. *Johnson Memorial Hospital, Inc.*, 66 Conn. App. 518, 526, 785 A.2d 234, cert. denied, 259 Conn. 902, 789 A.2d 990 (2001).

We note that the court in its memorandum of decision did not directly address the issue of whether the continuing course of conduct doctrine applied to the plaintiff's cause of action. That conclusion, however, is implicit in the court's finding that an action based on any events that occurred prior to November 20, 1998, was time barred. We agree with the trial court.

First, we have found no authority to support the proposition that the continuing course of conduct doctrine should be applied in this context simply because of the husband's "special relationship" with the wife or because of his role as "fiduciary."[1] Second, the cases that the plaintiff cites in support of this contention can be easily distinguished, as none of the cited cases involve family matters or domestic relations. See *Fichera* v. *Mine Hill Corp.*, 207 Conn. 204, 210–13, 541 A.2d 472 (1988) (concluding that vendor-vendee relationship does not give rise to fiduciary duty and therefore does not require disclosure of false representations previously made to owners of certain real property, despite possible unfair trade practices); *Beckenstein* v. *Potter & Carrier, Inc.*, 191 Conn. 150, 151, 464 A.2d 18 (1983) (concerning contractual duty stemming from defendants' installation of defective roof on building

---

[1] Even if one could argue that a special relationship exists between husband and wife that triggers a particular "duty," there is no case law to indicate what that duty would entail under the facts and circumstances of this case.

constructed by plaintiffs); *Rosenfield* v. *Rogin, Nassau, Caplan, Lassman & Hirtle, LLC*, 69 Conn. App. 151, 161–62, 795 A.2d 572 (2002) (legal malpractice action concerning duty arising from attorney-client relationship); *Sanborn* v. *Greenwald*, 39 Conn. App. 289, 293–94, 664 A.2d 803 (same), cert. denied, 235 Conn. 925, 666 A.2d 1186 (1995); *Ricciuti* v. *Voltarc Tubes, Inc.*, 277 F.2d 809, 810 (2d Cir. 1960) (product liability action in which plaintiff alleged he contracted particular type of lung disease due to continual use of product manufactured by defendant). Finally, as the defendant argues in his brief, any duty arising from the husband and wife relationship between the parties would have terminated prior to November 20, 1998, specifically, on October 5, 1998, when the family court ordered that the marriage between the parties be dissolved. On the basis of the foregoing, the plaintiff's first claim fails.

II

The plaintiff also argues that the court improperly concluded that there was no genuine issue of material fact as to whether the events at the November 20, 1998 pretrial conference were sufficiently extreme and outrageous so as to constitute a cause of action for intentional infliction of emotional distress. Specifically, the plaintiff argues that the court improperly concluded that the defendant's actions on November 20, 1998, "in bartering [child] custody for money" could not be considered extreme and outrageous and therefore did not meet the standard required for an intentional infliction of emotional distress claim. We disagree.

We begin our analysis by setting forth the applicable standard of review. "Practice Book § 17-49 provides in relevant part that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the moving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . . On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court. . . . [O]ur review of the trial court's decision to grant the . . . motion for summary judgment is plenary." (Citations omitted; internal quotation marks omitted.) *Weldy* v. *Northbrook Condominium Assn., Inc.*, 279 Conn. 728, 733–34, 904 A.2d 188 (2006).

At the heart of the argument raised in the summary judgment motion was the assertion that the plaintiff's allegations, even if proven, do not, as a matter of law, constitute extreme or outrageous behavior. We agree. "In order for the plaintiff to prevail in a case for liability under . . . [intentional infliction of emotional distress], four elements must be established. It must be shown: (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe. . . . Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine. . . . Only where reasonable minds disagree does it become an issue for the jury. . . . Liability for intentional infliction of emotional distress requires conduct that exceeds all bounds usually tolerated by decent society." (Internal quotation

marks omitted.) *Valentine* v. *LaBow*, 95 Conn. App. 436, 448, 897 A.2d 624 (2006).

Regarding the events on November 20, 1998, the plaintiff's intentional infliction of emotional distress claim specifically alleged that (1) the defendant made clear, through counsel, that he was willing to make custodial concessions in exchange for certain financial concessions to be made by the plaintiff and (2) the defendant, again through his attorney, presented the plaintiff with a copy of a motion requesting that the court order that the parties' son be sent to a boarding school.

The court determined, as a matter of law, that the plaintiff did not meet her burden of proof for all of the necessary elements of a cause of action on the basis of intentional infliction of emotional distress. After considering the events that took place on November 20, 1998, the court stated: "Assuming *arguendo* the truth of the plaintiff's allegations concerning the events of November 20, 1998, the defendant's actions may have been disturbing and stressful, but they do not rise to the level of extreme and outrageous conduct proscribed by the law under the tort of intentional infliction of emotional distress. A party's insistence of a global settlement of all issues, even in the context of a dissolution action involving custody and financial issues, is not extreme or outrageous. . . As a matter of law, none of the events . . . may be characterized as so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. . . . Stress and anxiety are frequent companions of predissolution negotiations." (Citations omitted; emphasis in original; internal quotation marks omitted.)

Considering the alleged facts and evidence presented in the light most favorable to the plaintiff, we cannot conclude that reasonable minds could find the defendant's conduct toward the plaintiff extreme and outrageous. "Conduct on the part of the defendant that is

merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress." (Internal quotation marks omitted.) *Little* v. *Yale University*, 92 Conn. App. 232, 240, 884 A.2d 427 (2005), cert. denied, 276 Conn. 936, 891 A.2d 1 (2006).

We do not doubt that the defendant's actions may have been upsetting to the plaintiff; however, we agree with the court that "none of the events . . . may be characterized as so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." (Internal quotation marks omitted.) The court, therefore, properly determined that there was no genuine issue of material fact as to whether the defendant's actions rose to the level of extreme and outrageous conduct necessary to maintain a claim for intentional infliction of emotional distress.

## III

Finally, the plaintiff argues that the court improperly applied the doctrine of collateral estoppel as an additional ground for granting the defendant's motion for summary judgment.[2] In order for the defendant to assert this doctrine, the issue of coercion or duress must have been explicitly decided in a prior action or, in this case, before the court, *Gordon, J.* See *Dowling* v. *Finley Associates, Inc.*, 248 Conn. 364, 374, 727 A.2d 1245 (1999); *Delahunty* v. *Massachusetts Mutual Life Ins. Co.*, 236 Conn. 582, 600–601, 674 A.2d 1290 (1996). The court found that the agreement was fair and equitable and that it was in the best interest of the children.

---

[2] Although we need not address this issue, as we agree with the court that the conduct of the defendant during the period of time within the relevant statute of limitations period did not amount to extreme and outrageous conduct as a matter of law, we do not agree that she was collaterally estopped from asserting her claim that she was coerced into accepting the settlement.

The fairness of the agreement does not exclude the possibility that it was made under duress. The court could not draw an inference in deciding a motion for summary judgment that a fair and equitable agreement was not made under duress because that inference must be drawn in favor of the nonmoving party. See *State* v. *Burnaka*, 61 Conn. App. 45, 52, 762 A.2d 485 (2000).[3]

Whether the agreement was made under duress was not the issue in this appeal. The issue was whether the court, as a matter of law, correctly decided that the defendant's conduct during the period within the applicable statute of limitations period constituted an intentional infliction of emotion distress to the plaintiff. We believe that the court correctly decided those issues, and, because they are dispositive of the underlying action, we will affirm the summary judgment rendered in favor of the defendant.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[3] The *Burnaka* court explained that when considering a motion for summary judgment, "a trial court examines the evidence, draws inferences in favor of the nonmoving party and determines whether the same facts would entitle the moving party to a directed verdict." *State* v. *Burnaka*, supra, 61 Conn. App. 52.