NICHOLAS J. BYRNE, JR. *v.* MARTIN B. BURKE ET AL.
(AC 29237)

DiPentima, Harper and Berdon, Js.

Argued September 25, 2008—officially released January 20, 2009

*Nicholas J. Byrne, Jr.*, pro se, the appellant (plaintiff).

*Dawn E. Alderucci*, with whom, on the brief, were *Kerry R. Callahan, David R. Makarewicz* and *Daniel B. Fitzgerald*, for the appellee (named defendant).

*David P. Atkins*, with whom, on the brief, was *Marcy Tench Stovall*, for the appellee (defendant Mark R. Spurling).

*Opinion*

HARPER, J. The plaintiff, Nicholas J. Byrne, Jr., appeals from the summary judgment rendered by the trial court in favor of the defendants Martin B. Burke and Mark R. Spurling.[1] On appeal, the plaintiff claims

---

[1] The plaintiff also named 130 Union Street Associates, LLC, as a defendant, but it is not a party to this appeal, which concerns only the court's judgment as to Burke's and Spurling's motions for summary judgment. All references to the defendants in this opinion are to Burke and Spurling.

that the court improperly concluded, as a matter of law, (1) on the civil conspiracy count against Burke, that the plaintiff's cause of action was time barred; (2) on the breach of fiduciary duty count, that the plaintiff did not establish that Burke owed him a fiduciary duty; (3) on the civil conspiracy count against Burke, that Burke's deposition testimony in a probate hearing and testimony during a court hearing were not inconsistent; (4) on the vexatious litigation count, that the Probate Court's ruling, in favor of Spurling's client, is conclusive evidence of probable cause to initiate probate proceedings; (5) on the vexatious litigation count, that the plaintiff did not prove a claim for vexatious litigation; and (6) on the civil conspiracy count against Spurling, that the plaintiff's conspiracy count was based on the same facts that the court relied on to dismiss the vexatious litigation count. We disagree with the plaintiff and, accordingly, affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the plaintiff's claims. The court found the following facts to be undisputed. "In April, 1997, Burke, who is an attorney, prepared a will for the plaintiff's father, Nicholas Byrne, Sr., which the plaintiff's father signed in Burke's office on April 7, 1997 [1997 will]. The 1997 will left the testator's residence in equal shares to his two sons and left his residuary estate in equal shares to his daughters. The 1997 will specifically excluded one of the testator's daughters, Monica Banta. The will appointed the plaintiff executor and was witnessed by a paralegal employed by Burke and an employee of another tenant of the building where Burke's law office was located.

"On October 1, 2000, the testator died, and on November 10, 2000, the plaintiff initiated the probate process by submitting the 1997 will and a prior 1978 will of his parents to the Ellington district Probate Court. . . . Banta challenged the 1997 will on the grounds that her

father lacked testamentary capacity when he executed the 1997 will and was under the undue influence of the plaintiff. She retained . . . Spurling to represent her. Spurling and Burke both had offices at 130 Union Street in Vernon. While the plaintiff alleges that Spurling and Burke had a 'de facto partnership,' Burke has submitted an affidavit in which he states that while he and Spurling share office space at 130 Union Street, Spurling has his own separate law practice, and they have never been associates or partners in their legal practices. . . .

"On May 4, 2001, Burke was deposed in the probate proceeding, and his deposition was used in lieu of his live testimony at a May 9, 2001 hearing before probate Judge James Purnell III. After the hearing, [in an oral ruling] Judge Purnell rejected the 1997 will as the product of undue influence. Judge Purnell issued a written decision on June 25, 2001, holding that the 1997 will did not revoke any prior wills or codicils. On January 16, 2002, Judge Purnell issued another written decision in which he approved and admitted to probate a September 24, 1996 handwritten will in which the testator appointed . . . Banta [executrix] and directed that his estate be divided equally among all his children. The plaintiff appealed [from] the Probate Court decisions to the Superior Court, where a de novo trial was conducted by *Hon. Lawrence C. Klaczak,* judge trial referee. [Burke submitted live testimony to the Superior Court on November 12, 2003, at which he disclosed a January, 1997 letter that Burke addressed to the testator reflecting the testator's contemplation to exclude Banta from his will.] In a . . . memorandum of decision filed November 20, 2003, Judge Klaczak reversed the Probate Court decree, finding [that] the September 24, 1996 will was invalid and [that] the . . . 1997 will was valid." (Citation omitted.)

In the present appeal, the plaintiff, appearing pro se, filed a four count complaint directed against Burke and

Spurling.[2] The complaint, dated November 16, 2006, concerned the defendants' actions while the plaintiff was defending the 1997 will before the Probate Court. In his amended complaint, filed on December 26, 2006, the plaintiff alleged in count one, a claim of vexatious litigation against Spurling, in count two, a claim of conspiracy against both Spurling and Burke, and in counts three and four, a claim of breach of fiduciary duty and intentional infliction of emotional distress, respectively, against Burke.

Thereafter, each defendant filed a motion for summary judgment. Spurling argued that he was entitled to summary judgment on counts one and two on the ground that the probate proceeding he initiated was decided in favor of his client and established probable cause. Burke argued that he was entitled to summary judgment on all counts directed against him on the ground that the tort claims were time barred by General Statutes § 52-577.[3]

In his objection to Spurling's motion for summary judgment, the plaintiff argued that questions of material fact existed, such as whether Spurling had probable cause to initiate a probate proceeding and whether Spurling conspired with Burke to have the Probate Court reject the 1997 will on the basis of Burke's allegedly false deposition testimony. In his objection to Burke's motion for summary judgment, the plaintiff argued that questions of material fact existed, such as whether Burke fraudulently concealed a January, 1997 letter that, the plaintiff posits, subsequently, aided the Superior Court in the probate appeal in determining that the 1997 will was valid. The plaintiff further argued

---

[2] None of the counts in the plaintiff's complaint was directed against the third named defendant, 130 Union Street Associates, LLC. See footnote 1.

[3] General Statutes § 52-577 provides: "No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of."

that Burke's concealment resulted in fraud that tolled, under General Statutes § 52-595,[4] the statute of limitations.

On July 7, 2007, the court heard oral arguments and, by memorandum of decision filed September 4, 2007, granted both defendants' motions for summary judgment and thereafter rendered judgment in the defendants' favor. This appeal followed. Additional facts will be set forth as necessary.

Before considering the plaintiff's claims on appeal, we first note our well established standard of review. "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law." (Internal quotation marks omitted.) *Viola* v. *O'Dell*, 108 Conn. App. 760, 763–64, 950 A.2d 539 (2008).

"A material fact is a fact that will make a difference in the outcome of the case. . . . Once the moving party has presented evidence in support of the motion for summary judgment, the opposing party must present evidence that demonstrates the existence of some disputed factual issue . . . . It is not enough, however, for the opposing party merely to assert the existence

[4] General Statutes § 52-595 provides: "If any person, liable to an action by another, fraudulently conceals from him the existence of the cause of such action, such cause of action shall be deemed to accrue against such person so liable therefor at the time when the person entitled to sue thereon first discovers its existence."

of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court . . . ." *Campbell* v. *Plymouth*, 74 Conn. App. 67, 80–81, 811 A.2d 243 (2002).

"[I]ssue-finding, rather than issue-determination, is the key to the procedure. . . . [T]he trial court does not sit as the trier of fact when ruling on a motion for summary judgment. . . . [Its] function is not to decide issues of material fact, but rather to determine whether any such issues exist." (Internal quotation marks omitted.) *Precision Mechanical Services, Inc.* v. *T.J. Pfund Associates, Inc.*, 109 Conn. App. 560, 564, 952 A.2d 818, cert. denied, 289 Conn. 940, 959 A.2d 1007 (2008). "The test is whether a party would be entitled to a directed verdict on the same facts. . . . A motion for summary judgment is properly granted if it raises *at least one* legally sufficient defense that would bar the plaintiff's claim and involves no triable issue of fact." (Emphasis added; internal quotation marks omitted.) *Weiner* v. *Clinton*, 106 Conn. App. 379, 383, 942 A.2d 469 (2008).

"On appeal, [w]e must decide whether the trial court erred in determining that there was no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . Because the trial court rendered judgment for the defendants as a matter of law, our review is plenary and we must decide whether the trial court's conclusions are legally and logically correct and find support in the facts that appear in the record." (Citation omitted; internal quotation marks omitted.) *Alexander* v. *Vernon*, 101 Conn. App. 477, 482–83, 923 A.2d 748 (2007).

I

On all counts directed against Burke, the court concluded that the plaintiff's causes of action were time barred. Although the plaintiff's claims can be viewed

as distinct and separate, our consideration of the first claim regarding the statute of limitations necessarily implicates the second and third claims,[5] and consequently, we will address the plaintiff's first three claims together. The plaintiff contends that his causes of action are not time barred because the statute of limitations was tolled by fraud. We disagree.

As previously stated, our review is plenary, and we must determine whether the court's conclusions are legally and logically correct in that they find support in the record. The plaintiff, in counts two, three and four of the complaint, alleged a tort cause of action against Burke. In response, Burke raised a statute of limitations defense under § 52-577.[6] The plaintiff, in turn, claimed that the statute of limitations was tolled, under § 52-595,[7] for fraudulent concealment.[8] The plaintiff argued that the statute of limitations was tolled because Burke fraudulently concealed a January, 1997 letter, which Burke addressed to the testator, that evidenced the testator's contemplation to remove his daughter, Banta, from the 1997 will.[9] He further argued that the testator's intent, as expressed in the letter, countered Banta's argument that the testator was unduly influenced. The plaintiff argued that Burke's

[5] For the reasons we will set forth, we conclude that we need not consider the merits of the plaintiff's second and third claims because the court properly determined that the plaintiff's causes of action against Burke were barred by the statute of limitations.

[6] See footnote 3.

[7] See footnote 4.

[8] Although the plaintiff failed to plead fraudulent concealment in his reply to Burke's special defense; see *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.*, 245 Conn. 1, 32–34, 717 A.2d 77 (1998); and, during oral arguments on the motions for summary judgment, Burke notified the court that the plaintiff improperly pleaded that the statute of limitations was tolled, this is not an issue briefed on appeal.

[9] The plaintiff's argument applies to all three claims against Burke because Burke's alleged failure to disclose the January, 1997 letter was the factual gravamen of all three claims against Burke.

concealment of the January, 1997 letter caused the Probate Court to rule in favor of Banta, and, during the probate appeal, when Burke later revealed the January, 1997 letter during his testimony, the Superior Court reversed the Probate Court's decree and ruled in the plaintiff's favor.

During oral argument on Burke's motion for summary judgment, Burke argued that the plaintiff's counts were barred by the statute of limitations because the alleged failure by Burke to reveal the January, 1997 letter, occurred on May 4, 2001, during his deposition for the probate hearing or, in the alternative, on May 9, 2001, when the object of the alleged conspiracy between Spurling and Burke was achieved by the Probate Court's oral ruling invalidating the 1997 will. Burke pointed out that both of these events occurred more than five years prior to the plaintiff's service of the complaint.[10] Therefore, because the complaint was served on Burke on November 13, 2006, the plaintiff's causes of action were time barred.

The court concluded that "[a]ll of the alleged conduct by the defendants in the plaintiff's amended complaint occurred more than three years prior to service and filing of the plaintiff's action." The court stated that "[r]egardless of whether the plaintiff has sufficiently pleaded fraudulent concealment . . . no genuine issue[s] of material fact exist . . . . [T]he plaintiff has not provided any evidence that supports his claim that a genuine issue of material fact remains . . . . Burke was not asked by the plaintiff's former counsel if he

---

[10] See footnote 9. Furthermore, on this appeal, Burke argues that even if the plaintiff can prove that the statute of limitations should be tolled, the commencement of the action falls outside the statute period because the plaintiff acknowledges that he discovered the January, 1997 letter, three years and one day prior to service of the complaint, on November 12, 2003. Therefore, because Burke was served on November 13, 2006, the plaintiff's causes of action were one day late.

had any letters in his file. . . . The plaintiff has also not pointed out any evidence that would indicate that Burke failed to disclose the existence of the letter for the purpose of obtaining a delay in the filing of the complaint by the plaintiff. The plaintiff has not submitted any evidence showing the significance of Burke's January 9, 1997 letter in relation to the plaintiff's claims in his amended complaint and how the failure to disclose this letter affected the plaintiff's ability to bring his claims. . . . Accordingly, Burke's motion for summary judgment is granted as to all counts against him on the ground that the plaintiff's claims against him are barred by the statute of limitations."

"The question of whether a party's claim is barred by the statute of limitations is a question of law, which this court reviews de novo." (Internal quotation marks omitted.) *Smulewicz-Zucker* v. *Zucker*, 98 Conn. App. 419, 423, 909 A.2d 76 (2006), cert. denied, 281 Conn. 905, 916 A.2d 45 (2007). In the present case, it is undisputed that the complaint was served on the defendants on November 13, 2006, and that the applicable limitations period is three years under § 52-577. Therefore, the issue to be resolved is whether the court properly found that the causes of action accrued prior to November 13, 2003, which resulted in their being time barred.

We first set forth the relevant legal principles. "[S]ection 52-577 is a statute of repose in that it sets a fixed limit after which the tortfeasor will not be held liable and in some cases will serve to bar an action before it accrues. . . . [Section] 52-577 provides: No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of. This court has determined that [§] 52-577 is an occurrence statute, meaning that the time period within which a plaintiff *must commence an action* begins to run at the moment the act or omission complained of

occurs. . . . The three year limitation period of § 52-577, therefore, begins with the date of the act or omission complained of, not the date when the plaintiff first discovers an injury." (Citations omitted; emphasis added; internal quotation marks omitted.) *Valentine* v. *LaBow*, 95 Conn. App. 436, 444–45, 897 A.2d 624, cert. denied, 280 Conn. 933, 909 A.2d 963 (2006).[11]

The date the plaintiff first discovers an injury, however, becomes relevant if the plaintiff can show that the statute of limitations is tolled by the defendant's fraudulent concealment under § 52-595. General Statutes § 52-595 provides: "If any person, liable to an action by another, fraudulently conceals from him the existence of the cause of such action, such cause of action shall be deemed to accrue against such person so liable therefor at the time when the person entitled to sue thereon first discovers its existence." Our Supreme Court has stated that "[t]o establish that the [defendant] had fraudulently concealed the existence of [her] cause of action and so had tolled the statute of limitations, the [plaintiff] had the burden of proving that the [defendant was] aware of the facts necessary to establish this cause of action . . . and that [it] had intentionally concealed those facts from the [plaintiff]. . . . The [defendant's] actions must have been directed to the very point of obtaining the delay [in filing the action] of which [it] afterward [seeks] to take advantage by pleading the statute. . . . To meet this burden, it was not sufficient for the [plaintiff] to prove merely that it was more likely than not that the [defendant] had concealed the cause of action. Instead, the [plaintiff] had to prove fraudulent concealment by the more exacting standard of clear, precise and unequivocal evidence . . . ." (Citations omitted; internal quotation marks omitted.) *Krondes* v.

---

[11] The date the action was commenced is the date of service of process, which is when the writ of summons and complaint were served on the defendants. See *Rocco* v. *Garrison*, 268 Conn. 541, 553, 848 A.2d 352 (2004).

*Norwalk Savings Society*, 53 Conn. App. 102, 113–14, 728 A.2d 1103 (1999).

In its memorandum of decision on Burke's motion for summary judgment, the court referenced the following undisputed events: (1) Burke's deposition was held on May 4, 2001, (2) Burke's testimony during the probate appeal in the Superior Court was on November 12, 2003, (3) the complaint was served on November 13, 2006, and (4) the complaint was filed in court on November 16, 2006.[12] Based on these dates, we conclude that regardless if we review the plaintiff's first three claims under § 52-577 or § 52-595, the commencement of the action occurred beyond the applicable statutory period. Even if we assume that the tort and fraudulent concealment occurred on the same date, the tolling period ended on November 12, 2003. On that date, the plaintiff learned of the letter through Burke's testimony during the probate appeal. The action was commenced when the defendants were served with the complaint on November 13, 2006, more than three years later. Therefore, the court properly granted Burke's motion for summary judgment on the ground that the plaintiff's causes of action directed against Burke were time barred.

## II

Next, the plaintiff claims that the court improperly concluded that the Probate Court's ruling in favor of

[12] In oral argument before this court, the plaintiff argued that he did not become aware of his causes of action until November 20, 2003, when the Superior Court's decision was released. That decision validated the 1997 will in the plaintiff's favor and referenced the January, 1997 letter that was withheld by Burke during his May, 2001 deposition. This argument, however, was not raised before the court when it reviewed Burke's motion for summary judgment, and, as a result, we are limited to the plaintiff's argument as raised in his memorandum of law supporting his objection to Burke's motion for summary judgment, in which he relied on the November 12, 2003 date in his argument to assert when the tolling of the statute of limitations commenced.

Spurling's client was conclusive evidence of probable cause for Spurling to initiate probate proceedings and that the plaintiff did not prove a claim for vexatious litigation on the basis of the Superior Court's subsequent reversal of the Probate Court's ruling.[13] We disagree.

The following additional facts are relevant to our review. In granting Spurling's motion for summary judgment, the court stated that the "probate proceedings were resolved in favor of Spurling's client, Banta. Even though the Superior Court later reversed the decree of the Probate Court, the resolution of the initial probate proceedings in favor of Spurling's client conclusively shows that he had probable cause to initiate those proceedings." Therefore, the court concluded that the plaintiff failed to prove his claim for vexatious litigation.

As previously stated, our review is plenary, and we must determine whether the court's conclusions are legally and logically correct by finding support for those conclusions in the record. Having set forth the standard of review, we now turn to the elements of an action for vexatious litigation. It is well established that an element of a vexatious litigation action relates to probable cause. See *Falls Church Group, Ltd.* v. *Tyler, Cooper & Alcorn, LLP*, 281 Conn. 84, 94, 912 A.2d 1019 (2007). "[T]he legal idea of probable cause is a bona fide belief in the existence of the facts essential under the law for the action and such as would warrant a person of ordinary caution, prudence and judgment, under the circumstances, in entertaining it. . . . Probable cause is the knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of. . . . Thus, in the

---

[13] Although the plaintiff's claims can be viewed as distinct and separate, our consideration of one necessarily implicates the other, and, consequently, we will discuss the plaintiff's fourth and fifth claims together.

context of a vexatious suit action, the defendant lacks probable cause if he lacks a reasonable, good faith belief in the facts alleged and the validity of the claim asserted." (Internal quotation marks omitted.) Id., 94–95. "[T]he existence of probable cause is an absolute protection against an action for [vexatious litigation], and what facts, and whether particular facts, constitute probable cause is always a question of law." (Internal quotation marks omitted.) Id., 94.

"Our Supreme Court recently had the opportunity to consider whether a higher legal standard of probable cause should be applied to attorneys and law firms sued for vexatious litigation. . . . After considering the statute and the competing policy interests, the court concluded that a higher standard should not apply. . . . Instead, in assessing probable cause, the court phrased the critical question as whether on the basis of the facts known by the law firm, a reasonable attorney familiar with Connecticut law would believe he or she had probable cause to bring the lawsuit. . . . As is implied by its phrasing, the standard is an objective one that is necessarily dependent on what the attorney knew when he or she initiated the lawsuit. . . . Further, the court warned that [p]robable cause may be present even where a suit lacks merit. [Although] [f]avorable termination of the suit often establishes lack of merit . . . the plaintiff in [vexatious litigation] must separately show lack of probable cause." (Citations omitted; internal quotation marks omitted.) *Embalmers' Supply Co.* v. *Giannitti*, 103 Conn. App. 20, 34–35, 929 A.2d 729, cert. denied, 284 Conn. 931, 934 A.2d 246 (2007).

"[I]f it appears in the action for . . . a vexatious suit, that the prosecution properly ended in a judgment of conviction, or that in the civil suit judgment was properly rendered against the defendant therein, such outstanding judgment is, as a general rule, conclusive

evidence of the existence of probable cause for instituting the prosecution, or the suit." *Frisbie* v. *Morris*, 75 Conn. 637, 639–40, 55 A. 9 (1903). "[I]f the trial court determines that the prior action was objectively reasonable, the plaintiff has failed to meet the threshold requirement of demonstrating an absence of probable cause and the defendant is entitled to prevail." (Internal quotation marks omitted.) *Falls Church Group, Ltd.* v. *Tyler, Cooper & Alcorn, LLP*, supra, 281 Conn. 99. "This is true although it is reversed upon appeal and finally terminated in favor of the person against whom the proceedings were brought. . . . Likewise, a termination of civil proceedings . . . by a competent tribunal adverse to the person initiating them is not evidence that they were brought without probable cause." 3 Restatement (Second), Torts § 675, comment (b) (1977).

We conclude that the Probate Court's ruling in favor of Spurling's client was conclusive evidence of probable cause. Although the Probate Court's ruling was later reversed on appeal in the plaintiff's favor, the ruling was a valid judgment in favor of Spurling's client, and both sides had an opportunity to defend and to argue a position. The Probate Court's ruling, regardless of its subsequent reversal, served as an absolute protection against an action for vexatious litigation.[14]

As to the plaintiff's claim that the court improperly concluded that he did not prove a claim for vexatious litigation on the basis of the Superior Court's subsequent reversal of the Probate Court's ruling, because

---

[14] See, e.g., *Heussner* v. *Day, Berry & Howard, LLP*, 94 Conn. App. 569, 893 A.2d 486 (probate decision establishing issue of material fact establishes probable cause for defendant to initiate suit, thus barring plaintiff's claim for malicious prosecution by collateral estoppel), cert. denied, 278 Conn. 912, 899 A.2d 38 (2006); *Frisbie* v. *Morris*, supra, 75 Conn. 639–40 (probate application against plaintiff, claiming appointment of conservator over plaintiff, that terminated in valid judgment is conclusive probable cause to withstand vexatious suit).

we have determined that probable cause existed for Spurling to initiate probate proceedings, the plaintiff's purported failure to prove a claim for vexatious litigation, on the basis of the probate proceedings, is irrelevant.

## III

Last, the plaintiff claims that the court improperly concluded that the counts for conspiracy and vexatious litigation rested on the same facts and rendered summary judgment on the conspiracy count on this ground.[15] We disagree.

As previously stated, our review is plenary, and we must determine whether the court's conclusions are legally and logically correct in that they find support in the record. The following additional facts are pertinent to our resolution of the plaintiff's claim. The plaintiff's complaint alleged that Spurling and Burke conspired to have the 1997 will rejected at the Probate Court. In its decision to grant Spurling's motion for summary judgment, the court noted the elements of a claim for civil conspiracy. The most relevant element, as emphasized by the court, is that the alleged conspirators combined to "do a *criminal or unlawful act* by criminal or unlawful means . . . ." (Emphasis added; internal quotation marks omitted.) *Chapman Lumber, Inc.* v. *Tager*, 288 Conn. 69, 100 n.34, 952 A.2d 1 (2008). The court concluded that "because the plaintiff cannot as a matter of law prove that Spurling lacked probable cause to assert his client's claims [which were to reject the 1997 will] at the probate level, the plaintiff cannot show that Spurling's conduct was unlawful or [constituted] a lawful act done by unlawful means." Therefore,

---

[15] Although we concluded previously that the claim of conspiracy against Burke was time barred, Spurling never raised a statute of limitations defense on the claims directed against him. Accordingly, we will review the merits of this claim.

on the basis of its determination that Spurling had probable cause to initiate a probate claim, the court concluded that "[t]he plaintiff's civil conspiracy count based upon [the] same facts [as the vexatious litigation count] must . . . fail."

On appeal, the plaintiff argues that Spurling and Burke conspired to have the 1997 will rejected by having Burke provide false testimony under oath, during his deposition in the probate proceeding, which concealed the January, 1997 letter. Specifically, he asserts that the vexatious litigation count was based on Spurling's actions when he initiated the probate proceedings and that the civil conspiracy count was based on the actions by Spurling and Burke after the probate proceedings were commenced. As a result, the plaintiff argues that his counts are distinct and not predicated on the same facts. We find this argument unpersuasive.

The civil conspiracy count against Spurling was of the same character as the vexatious litigation count because the allegations on both counts hinge on Spurling's intent unlawfully, without probable cause, to have the 1997 will rejected by the Probate Court. As we concluded in part II, Spurling had probable cause to bring a probate claim, on behalf of his client, to reject the 1997 will. Accordingly, it would be legally inconsistent to conclude that Spurling lawfully initiated probate proceedings to reject the 1997 will but conspired to reject the 1997 will unlawfully. See, e.g., *Heussner* v. *Day, Berry & Howard, LLP*, 94 Conn. App. 569, 579 n.4, 893 A.2d 486 (court barred negligent infliction of emotional distress count because count was predicated on facts identical to malicious prosecution count, which was barred by collateral estoppel), cert. denied, 278 Conn. 912, 899 A.2d 38 (2006). Therefore, the court properly concluded that the counts for conspiracy and vexatious litigation rested on the same facts.

The judgment is affirmed.

In this opinion the other judges concurred.