******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# VILLAGE MORTGAGE COMPANY *v.*
# JAMES VENEZIANO
## (AC 40701)

Prescott, Suarez and DiPentima, Js.

*Syllabus*

The plaintiff mortgage company sought declaratory relief related to the defendant's failure to comply with its corporate bylaws, which required the defendant to satisfy state and federal licensing requirements related to the plaintiff's mortgage loan business. The defendant was a founding shareholder and former employee, officer, and director of the plaintiff. The trial court, relying on a stipulation entered into by the parties, ordered the defendant to satisfy the licensing requirements by a certain date, or, in accordance with the plaintiff's bylaws, his stock in the plaintiff would be surrendered. After finding that the defendant had failed to comply with its order, the court rendered judgment ordering the defendant's shares to be surrendered to the plaintiff, from which the defendant appealed to this court. On appeal, the defendant claimed, inter alia, that the court erred in its interpretation of the parties' stipulation. The plaintiff subsequently filed a motion to dismiss the appeal on the ground that this court lacked subject matter jurisdiction over the appeal because the defendant's claims were moot. The plaintiff argued that during the pendency of the present appeal, it had taken the defendant's stock in satisfaction of a judgment rendered in certain prior litigation between the parties, and, therefore, the defendant was unable to demonstrate that he was entitled to any practical relief. *Held* that this court lacked subject matter jurisdiction, and, therefore, the appeal was dismissed: there did not appear to be any dispute between the parties that this court was unable to afford the defendant any direct, practical relief from the reversal of the judgment from which he appealed as the subject of the judgment in the present action was the defendant's stock in the plaintiff, which, during the pendency of the appeal, the plaintiff has taken in satisfaction of the judgment rendered in a prior action; despite the defendant's claim that this court may afford him practical relief because the issue of when the plaintiff took the stock in satisfaction of the judgment rendered in the prior action would affect its value, the defendant did not offer any explanation of how a reversal of the trial court's judgment in the present action would affect the value of the stock, and the court in the present action did not make any findings concerning the valuation of the stock or when the plaintiff acquired it, and, although the defendant argued before this court that the outcome of the present action had collateral estoppel and res judicata effects as to when the plaintiff took his stock, he contradicted these arguments before the trial court in the prior action, claiming that the value of the stock taken by the plaintiff satisfied the entire judgment; moreover, despite the defendant's argument that his ability to bring an action for vexatious litigation in the future against the plaintiff was dependent on this appeal being heard on its merits, because the plaintiff prevailed in the present action, the defendant was unable to demonstrate that probable cause was lacking, and, thus, there was no possibility that this court's resolution of the claims raised in the appeal would have the effect of imposing liability on the plaintiff for commencing the present action; furthermore, the defendant's claim that the present appeal could affect a future action against the plaintiff for fraud was unavailing, the scope of the underlying action was narrow, there were no claims of fraud before the court, and, as a result of the defendant's conclusory analysis of this issue in his objection to the plaintiff's motion to dismiss the appeal, the factual basis of any future cause of action sounding in fraud was unknown to this court; accordingly, the defendant did not demonstrate what was reasonably possible in the future, and, therefore, this court was not persuaded that the collateral consequences on which the defendant relied were reasonably possible.

Argued October 5, 2020—officially released March 9, 2021

Action seeking, inter alia, a declaratory judgment with respect to the ownership of certain shares of the plaintiff corporation, brought to the Superior Court in the judicial district of Hartford, where the matter was tried to the court, *Scholl, J.*; judgment for the plaintiff, from which the defendant appealed to this court; subsequently, the court, *Scholl, J.*, denied the defendant's motion to open, and the defendant filed an amended appeal. *Appeal dismissed.*

*Gregory T. Nolan*, with whom, on the brief, was *Patsy M. Renzullo*, for the appellant (defendant).

*Richard P. Weinstein*, with whom, on the brief, was *Sarah Black Lingenheld*, for the appellee (plaintiff).

*Opinion*

SUAREZ, J. The defendant, James Veneziano, was a founding shareholder and former employee, officer, and director of the plaintiff, Village Mortgage Company. The plaintiff brought the civil action underlying this appeal seeking relief related to the defendant's failure to comply with its corporate bylaws, which required the defendant to satisfy state and federal licensing requirements pertaining to its mortgage loan business. During the course of the underlying litigation, the trial court, relying on a stipulation entered into by the parties, ordered the defendant to satisfy the licensing requirements at issue by a certain date or, in accordance with the penalty for his noncompliance set forth in the plaintiff's bylaws, his stock in the plaintiff would be surrendered to the plaintiff. Subsequently, after finding that the defendant had failed to comply with its order, the court rendered judgment ordering the defendant's shares to be surrendered to the plaintiff.

From this judgment, the defendant appeals. The defendant claims that the court erred (1) in its interpretation of the parties' stipulation, (2) by failing to apply the doctrines of substantial performance, waiver, and estoppel in its analysis of whether he satisfied the court's order, (3) in finding that the plaintiff did not breach the covenant of good faith and fair dealing, and (4) by denying his motion to open the judgment without holding a preliminary hearing related to the motion. The plaintiff argues that this court lacks subject matter jurisdiction over the appeal because the defendant's claims are moot. We agree with the plaintiff's jurisdictional argument. Accordingly, we dismiss the appeal.

The following facts, as found by the court, and procedural history are relevant to our analysis. The plaintiff commenced the underlying action in February, 2016. In its revised complaint dated March 29, 2016, it alleged in count one that it was in the business of originating residential mortgage loans and was regulated by the federal government and the New England states in which it was licensed. The plaintiff alleged that regulations require "those who have [a 10 percent] or more ownership interest in . . . mortgage companies to [submit] to background checks, fingerprinting, credit checks, net worth compliance, surety bonds, and mandatory and timely record management and reporting on the [National Mortgage Licensing System, the system of licensure for mortgage companies and individuals seeking licensing by state and federal mortgage licensing authorities] . . . ." The plaintiff alleged that the defendant owned more than 10 percent of its stock and that his license and records "are inexorably linked to the [plaintiff's] . . . records."

The plaintiff alleged that, despite its request, the defendant had failed to comply with the regulatory

requirements and his "continued failure to comply with such regulatory requirements has made it impossible for the plaintiff to meet its mandatory regulatory and reporting obligations . . . which puts [the] plaintiff at risk of potential administrative action and suspension of the plaintiff's license by respective state regulators." The plaintiff alleged that its bylaws "address the recalcitrance of the defendant and anyone else who may own [10 percent of its shares] but fails and refuses to comply with regulatory requirements," in that it may demand that such shareholder surrender his or her shares. The plaintiff alleged that, despite making such demand, the defendant refused to surrender his shares.

The plaintiff alleged that, pursuant to a prejudgment remedy in a prior action that it brought against the defendant, a state marshal was in possession of the defendant's stock.[1] Nonetheless, the plaintiff alleged that "it is necessary for a court to adjudicate the rights of the plaintiff in regard to said shares and the determination ordering the surrender of same for their fair value."

In count two, the plaintiff, relying on its allegations in count one, alleged that its bylaws were enacted to protect its "federal and state licensing . . . ." The plaintiff also alleged that the bylaws should be enforced and it sought specific performance related thereto.

The parties entered into a stipulation that was reflected in an order issued by the court, *Dubay, J.*, on March 28, 2016. The order provided: "By stipulation, [the defendant's] stock is deemed to be surrendered to the [plaintiff] corporation pursuant to the bylaw provision requiring compliance with state and federal licensing authorities and shall be turned over by the marshal to the corporation unless the defendant fully and completely satisfies all federal and state regulatory licensing requirements for shareholders of [10 percent] or more stock in the plaintiff corporation on or before April 11, 2016."

On March 31, 2016, the defendant filed a notice of compliance with Judge Dubay's March 28, 2016 order. The following day, the plaintiff objected to the notice of compliance on the grounds that neither the plaintiff nor the applicable regulatory authorities had reviewed the filings purportedly made by the defendant or deemed them to be satisfactory. Ultimately, the matter was scheduled for a trial before the court, *Scholl, J.*, on February 3, 2017. Prior to the trial, the defendant filed an offer of proof in which he requested to elicit testimony from one or more of the plaintiff's attorneys with respect to the meaning of the parties' stipulation. The plaintiff objected to the defendant's request and offer of proof. The court denied the defendant's request, noting that its order was clear and unambiguous, and that its focus at the trial would be on whether the defendant had complied with the order. Following the

trial, the parties submitted briefs to the court.

After the date of the trial, but before the court issued its decision, the defendant filed a motion to open the evidence, which the court denied on May 8, 2017. In a subsequent articulation of its denial of this motion, the court explained: "The evidence proffered in the motion was not relevant to the issue before the court. The sole issue before the court was whether the defendant had complied with the court order entered pursuant to the parties' stipulation."

In its June 6, 2017 memorandum of decision, the court stated in relevant part: "The plaintiff is a mortgage lender licensed by state regulators. It does business in a number of states. [Haley Rice, the plaintiff's chief compliance officer and general counsel] oversees licensing requirements for the plaintiff. On March 31, 2016, Rice received the defendant's alleged compliance. It was not sufficient to submit to the regulators because [the defendant's] financial statement was filled out in pencil and the representations and warranties section on the last page, in which the signatory represents that the information provided is true, correct, and complete was crossed out. A notarized document submitted was [incorrectly] dated [March 30, 1948]. Although the plaintiff did receive new financials from the defendant, other deficiencies in his package persisted. A copy of the notarized document was resubmitted which was an altered form of the original document. Rice never received a complete set of forms from [the defendant] sufficient to submit to the appropriate regulatory authorities. [The defendant] did not request a background check as the regulatory form required. Nor did he fully explain the 'yes' answer on the forms, as required, in particular, and explanation of 'yes' to the question: 'Q. Have you ever voluntarily resigned, been discharged, or permitted to resign after allegations were made that accused you of . . . fraud, dishonesty, theft, or the wrongful taking of property?' To another 'yes' question the defendant provided inaccurate information. No package of forms acceptable to be submitted to the regulators was received from [the defendant] by the plaintiff on or before April 11, 2016.

"The defendant claims that the plaintiff breached the stipulation by not submitting the defendant's package of materials to regulators. Yet the court agrees that the plaintiff had no obligation to submit to the regulators materials that were in pencil, appeared to have been altered, or were inaccurate or incomplete.

"The defendant also claims that the parties' stipulation was not a fully integrated agreement, but included the requirements set forth [in an exhibit submitted to the court]. . . . Here, the court's order, based on the parties' stipulation, is complete in itself as to its terms. In any event, even if the court was to consider the instructions in [the exhibit] as part of the stipulation

on which the order was based, the defendant did not comply with those instructions. For example, [the exhibit] required that the defendant request a background check, which he did not.

"Lastly, the defendant has not substantially complied with the stipulation and order as he claims. . . . Here, based on the facts found by the court, the defendant did not comply with the terms of the stipulation and his breach was not immaterial.

"Therefore, the court finds that the defendant . . . did not comply with the court's March 28, 2016 order and judgment shall enter in favor of the plaintiff . . . that the defendant's stock is deemed surrendered to the [plaintiff] pursuant to the bylaw provision requiring compliance with state and federal licensing authorities and shall be turned over by the marshal to the [plaintiff]." (Citations omitted.) Thereafter, the defendant filed a motion to reargue, to which the plaintiff objected. The court denied the motion to reargue on July 17, 2017. Thereafter, the defendant appealed. After filing the appeal, the defendant moved to open the judgment, to which the plaintiff objected. On October 13, 2017, the court denied the motion to open. On November 22, 2017, the defendant filed an amended appeal encompassing the judgment rendered by the court in favor of the plaintiff, as well as the court's denial of his motion to open the judgment.

During the pendency of the present appeal, but prior to the time of oral argument, the plaintiff, pursuant to Practice Book § 66-8, filed a motion to dismiss the appeal on the ground that it was moot.[2] The plaintiff argued in relevant part: "[T]he fundamental issue in this action was the ownership of stock in [the] plaintiff at one time owned by [the] defendant. However, since the commencement of the [present] action, [the] plaintiff has obtained a final judgment in a separate action against [the] defendant. [The] [d]efendant's stock had been the subject [of] a prejudgment attachment during the pendency of such [prior] separate action but has now been turned over to [the] plaintiff and the value of such stock credited toward the judgment [awarded to the plaintiff in the prior action]. Regardless of the outcome of the [present] appeal, [the] plaintiff is entitled to [the] defendant's stock in satisfaction of the judgment in the [prior] action. Because [the] plaintiff has already taken [the] defendant's stock, there is no practical relief that can be awarded by this court and the appeal is moot. Therefore, [the] defendant's appeal should be dismissed."

In support of its motion to dismiss, the plaintiff referred to the procedural history of the prior action before the trial court, this court, and our Supreme Court, which is not in dispute.[3] In 2012, the plaintiff brought the prior action against the defendant seeking to, inter alia, recover damages under a theory that, for

several years, the defendant had used his control of the plaintiff's finances to misappropriate its funds. In July, 2014, the court, *Pickard, J.*, granted the plaintiff a prejudgment remedy permitting it to attach $1,250,000 worth of the defendant's stock in the plaintiff. In accordance with this remedy, a state marshal took possession of the defendant's stock. In January, 2016, following a court trial, the court, *J. Moore, J.*, awarded the plaintiff $2,080,185.09 in damages.

On January 26, 2016, the defendant filed an appeal from the judgment rendered in the prior action. On July 25, 2017, this court officially released its decision affirming the judgment of the trial court. See *Village Mortgage Co.* v. *Veneziano*, 175 Conn. App. 59, 167 A.3d 430 (2017). The defendant filed a petition for certification to appeal from this court's judgment, which our Supreme Court denied on November 8, 2017. See *Village Mortgage Co.* v. *Veneziano*, 327 Conn. 957, 172 A.3d 205 (2017). According to the plaintiff, it thereafter took possession of the defendant's stock, cancelled the shares, and credited the value of the stock to partially satisfy the judgment it obtained in the prior action.[4]

The plaintiff argued in its motion to dismiss that the only relief it sought in the present action was the relief that it had obtained, namely, a declaration that the defendant's stock in the plaintiff was deemed to be surrendered to the plaintiff. The plaintiff relied on the fact that the court had awarded it possession of the defendant's stock in the prior action. Moreover, the plaintiff argued, during the pendency of this appeal, the defendant not only had exhausted his right to appeal from the judgment rendered in the prior action, but also that the plaintiff had taken possession of the stock in partial satisfaction of the judgment rendered in the prior action. Thus, the plaintiff argued, the defendant is unable to demonstrate that he is entitled to any practical relief in connection with the present appeal. The plaintiff asserted that, regardless of whether the judgment rendered in the present action was affirmed or reversed as a result of this appeal, the judgment rendered in the prior action provided it with an independent legal right to the stock at issue.

The defendant filed an opposition to the plaintiff's motion to dismiss the appeal. Notably, the defendant did not dispute the relevant facts on which the plaintiff relied in its motion. Instead, the defendant argued that, although this court could not provide him direct, practical relief in terms of his regaining his stock, as the plaintiff had argued, it nonetheless could afford him practical relief with respect to two collateral consequences attendant to the judgment rendered in the present action.[5] First, he argued that "the issue of when [the plaintiff] took [the defendant's] stock affects the value of the taken stock, and this issue may be subject to preclusion based upon the June 6, 2017 decision

. . . ." In this respect, he argued that the judgment from which he appeals "may preclude further litigation of the issue of when the stock was taken by the [plaintiff], in 2012 or 2016. The value of [the plaintiff] changed dramatically between these years, thereby affecting the value of the stock taken from the [defendant] by the [plaintiff]. The issue of the value of the stock has not been litigated to a final judgment, so this issue remains in contention, especially as to whether the amount of the final judgment [awarded to the plaintiff in the prior action] has been partially or completely satisfied."

Second, the defendant argued that his ability to bring an action against the plaintiff sounding in vexatious litigation or fraud, related to the present action, was somehow dependent on his prevailing in the present appeal. The defendant argued that he had "an independent stake in obtaining a judgment in his favor for purposes of a later lawsuit for vexatious litigation and fraud." The defendant argued that several of his appellate claims concerned "the illegal, fraudulent, and vexatious ways the stock was taken in the present case . . . ." On April 11, 2018, this court denied the motion to dismiss the appeal. In the plaintiff's appellate brief, filed on May 11, 2018, the plaintiff, expressly relying on the facts and legal grounds set forth in its motion to dismiss the appeal, reasserted that this court lacks subject matter jurisdiction over the appeal because it is moot.[6] The defendant did not address the jurisdictional issue in its reply brief. We observe that, despite the fact that this court has denied the plaintiff's motion to dismiss, we may choose to reevaluate the jurisdictional question at this juncture. See, e.g., *Governors Grove Condominium Assn., Inc.* v. *Hill Development Corp.*, 187 Conn. 509, 511 and n.6, 446 A.2d 1082 (1982), overruled on other grounds by *Morelli* v. *Manpower, Inc.*, 226 Conn. 831, 628 A.2d 1311 (1993); *Barry* v. *Historic District Commission*, 108 Conn. App. 682, 687 n.2, 950 A.2d 1, cert. denied, 289 Conn. 943, 959 A.2d 1008 (2008), and cert. denied, 289 Conn. 942, 959 A.2d 1008 (2008); *Rocque* v. *Sound Mfg., Inc.*, 76 Conn. App. 130, 132 n.3, 818 A.2d 884, cert. denied, 263 Conn. 927, 823 A.2d 1217 (2003); *Groesbeck* v. *Sotire*, 1 Conn. App. 66, 67–68, 467 A.2d 1245 (1983). In this circumstance, we are persuaded that it is necessary to reevaluate the jurisdictional issue.

We are guided in our jurisdictional analysis by well settled principles. "Mootness is a question of justiciability that must be determined as a threshold matter because it implicates this court's subject matter jurisdiction. . . . Justiciability requires (1) that there be an actual controversy between or among the parties to the dispute . . . (2) that the interests of the parties be adverse . . . (3) that the matter in controversy be capable of being adjudicated by judicial power . . . and (4) that the determination of the controversy will result in practical relief to the complainant. . . . An

actual controversy must exist not only at the time the appeal is taken, but also throughout the pendency of the appeal. . . . When, during the pendency of an appeal, events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits, a case has become moot." (Citation omitted; internal quotation marks omitted.) *Renaissance Management Co.* v. *Barnes*, 175 Conn. App. 681, 685–86, 168 A.3d 530 (2017).

"Mootness presents a circumstance wherein the issue before the court has been resolved or had lost its significance because of a change in the condition of affairs between the parties. . . . [T]he existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. . . . In determining mootness, the dispositive question is whether a successful appeal would benefit the plaintiff or defendant in any way." (Citations omitted; internal quotation marks omitted.) *New Image Contractors, LLC* v. *Village at Mariner's Point Ltd. Partnership*, 86 Conn. App. 692, 698, 862 A.2d 832 (2004).

"[Our Supreme Court] has recognized, however, that a case does not necessarily become moot by virtue of the fact that . . . due to a change in circumstances, relief from the actual injury is unavailable. [Our Supreme Court has] determined that a controversy continues to exist, affording the court jurisdiction, if the actual injury suffered by the litigant potentially gives rise to a collateral injury from which the court can grant relief. . . . [F]or a litigant to invoke successfully the collateral consequences doctrine, the litigant must show that there is a reasonable possibility that prejudicial collateral consequences will occur. . . . This standard provides the necessary limitations on justiciability underlying the mootness doctrine itself. Where there is no direct practical relief available from the reversal of the judgment . . . the collateral consequences doctrine acts as a surrogate, calling for a determination whether a decision in the case can afford the litigant some practical relief in the future. The reviewing court therefore determines, based upon the particular situation, whether the prejudicial collateral consequences are reasonably possible." (Citation omitted; internal quotation marks omitted.) *State* v. *Gomes*, Conn. , , A.3d (2021).

There does not appear to be any dispute between the parties that this court is unable to afford the defendant any direct, practical relief from the reversal of the judgment from which he appeals. The subject of the judgment in the present action was the defendant's stock in the plaintiff and, during the pendency of the present appeal, the plaintiff has taken the stock in satisfaction

of the judgment rendered in the prior action. Thus, we focus our analysis on the defendant's argument that we may afford him some practical relief for the two reasons that he has articulated in his opposition to the plaintiff's motion to dismiss the appeal.

The defendant's first argument is that the issue of when the plaintiff took the stock greatly affects the value of the stock and that "this issue may be subject to preclusion based upon the June 6, 2017 decision [of Judge Scholl in the underlying action] . . . ." We note that, in the prior action, the defendant maintained that the plaintiff took the stock in 2012, as a consequence of certain regulatory filings, and not in 2016, when the court rendered judgment in the prior action in favor of the plaintiff. The defendant, however, does not offer any explanation of how a reversal of the judgment in the present action would affect the value of the stock that was taken by the plaintiff as a consequence of the judgment rendered in the prior action. The court in the present action did not make any findings concerning the valuation of the stock or when the plaintiff took it.

We also note that, although the defendant argues before this court that "[t]he outcome of [the present action] has collateral estoppel and res judicata effects as to when the [plaintiff] took [his] stock," he completely contradicted these arguments before the trial court in the prior action. In the prior action, on February 13, 2018, the defendant filed a motion for a determination that the judgment had been satisfied, in which he argued that the value of the stock taken by the plaintiff satisfied the entire judgment.[7] The plaintiff filed two objections to this motion. In a March 13, 2018 reply, the defendant argued in relevant part: "Claim preclusion, or res judicata, does [not] . . . affect this stock valuation. No court has determined the fair value of the stock taken from the defendant in satisfaction of the judgment." Specifically referring to the judgment rendered in the present action, the defendant stated: "Claim preclusion does not apply, as to stock valuation, with regard to the judgment [rendered by Judge Scholl on June 6, 2017]. In that matter, Judge Scholl did not hear any testimony regarding the value of the defendant's stock; the trial decided which party breached a stipulation. There was no determination of the stock's value, over the defendant's objection." These representations by the defendant in the prior action are consistent with our assessment of the present action.

Turning to the next collateral consequence advanced by the defendant, he argues that his ability to bring an action, related to the present action, against the plaintiff in the future is dependent on this appeal being heard on its merits. His arguments are, at times, inconsistent. He argues that "because of the [plaintiff's] misconduct, as discussed in [the defendant's appellate] brief, the [defendant] will seek to bring a vexatious litigation

claim against the [plaintiff]. However, the [defendant] cannot sue for vexatious litigation or fraud if the underlying lawsuit has not terminated fully in [the plaintiff's] favor. Accordingly, both parties continue to have stakes in the outcome of this appeal . . . ." He also argues: "[B]ecause of the illegal, fraudulent and vexatious way the stock was taken in the present case, which remain issues on appeal, the case is not moot as the [defendant] has an independent stake in obtaining a judgment in his favor for purposes of a later lawsuit for vexatious litigation and fraud." He asserts that, if he prevails in this appeal, "the [plaintiff] will be liable for its wrongful conduct in litigating this matter."

A brief review of principles governing vexatious litigation is warranted. "The cause of action for vexatious litigation permits a party who has been wrongfully sued to recover damages. . . . In Connecticut, the cause of action for vexatious litigation exists both at common law and pursuant to statute. Both the common law and statutory causes of action [require] proof that a civil action has been prosecuted . . . . Additionally, to establish a claim for vexatious litigation at common law, one must prove want of probable cause, malice and a termination of suit in the plaintiff's favor. . . . The statutory cause of action for vexatious litigation exists under [General Statutes] § 52-568, and differs from a common-law action only in that a finding of malice is not an essential element, but will serve as a basis for higher damages. . . . In the context of a claim for vexatious litigation, the defendant lacks probable cause if he lacks a reasonable, good faith belief in the facts alleged and the validity of the claim asserted." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Bernhard-Thomas Building Systems, LLC* v. *Dunican*, 286 Conn. 548, 553–54, 944 A.2d 329 (2008).

"[I]f it appears in the action for . . . a vexatious suit, that the prosecution properly ended in a judgment of conviction, or that in the civil suit judgment was properly rendered against the defendant therein, such outstanding judgment is, as a general rule, conclusive evidence of the existence of probable cause for instituting the prosecution, or the suit. . . . [I]f the trial court determines that the prior action was objectively reasonable, the plaintiff has failed to meet the threshold requirement of demonstrating an absence of probable cause and the defendant is entitled to prevail. . . . *This is true although it is reversed upon appeal and finally terminated in favor of the person against whom the proceedings were brought. . . .* Likewise, a termination of civil proceedings . . . by a competent tribunal adverse to the person initiating them is not evidence that they were brought without probable cause." (Citations omitted; emphasis added; internal quotation marks omitted.) *Byrne* v. *Burke*, 112 Conn. App. 262, 275–76, 962 A.2d 825, cert. denied, 290 Conn. 923, 966

A.2d 235 (2009).

The foregoing authority clearly undermines the defendant's argument that the present appeal may affect the outcome of a vexatious litigation action brought by him against the plaintiff in the future. Because the plaintiff prevailed in the present action, the defendant is unable to demonstrate that probable cause was lacking, even if we were to resolve this appeal in his favor. Contrary to the defendant's arguments, there is no possibility that our resolution of the claims raised in the appeal would have the effect of imposing liability on the plaintiff for commencing the present action.

The defendant also argues that the present appeal could affect a future action against the plaintiff sounding in fraud. "The essential elements of an action in [common-law] fraud . . . are that: (1) a false representation was made as a statement of fact; (2) it was untrue and known to be untrue by the party making it; (3) it was made to induce the other party to act upon it; and (4) the other party did so act upon that false representation to his injury. . . . [T]he party to whom the false representation was made [must claim] to have relied on that representation and to have suffered harm as a result of the reliance." (Internal quotation marks omitted.) *Sturm* v. *Harb Development, LLC*, 298 Conn. 124, 142, 2 A.3d 859 (2010).

The scope of the underlying action was narrow. The sole issue before the court was whether the defendant had complied with its March 28, 2016 order. There were no claims of fraud before the court and, in fact, the conduct of the plaintiff was not the subject of the court's decision. As a result of the defendant's conclusory analysis of this issue in his objection to the plaintiff's motion to dismiss the appeal, the factual basis of any future cause of action sounding in fraud is unknown to this court. In invoking the collateral consequences doctrine, an appellant need not demonstrate what is certain in the future, but must, through reasoned argument, demonstrate to the reviewing court what is reasonably possible in the future. See *State* v. *Gomes*, supra,     Conn.    . The defendant has failed to do so, and it is well settled that "speculation and conjecture . . . have no place in appellate review." (Internal quotation marks omitted.) *New Hartford* v. *Connecticut Resources Recovery Authority*, 291 Conn. 502, 510, 970 A.2d 578 (2009). Accordingly, this argument is unavailing.

For the foregoing reasons, we are not persuaded that the collateral consequences on which the defendant relies are reasonably possible. We dismiss the appeal as moot and thus do not reach the merits of the claims raised therein.

The appeal is dismissed.

In this opinion the other judges concurred.

[1] The plaintiff commenced the prior action in 2012 seeking to, inter alia,

recover damages under a theory that, for several years, the defendant had used his control of the plaintiff's finances to misappropriate its funds. We will discuss the prior action in greater detail later in this opinion.

[2] Practice Book § 66-8 provides in relevant part: "Any claim that an appeal or writ of error should be dismissed, whether based on lack of jurisdiction, failure to file papers within the time allowed or other defect, shall be made by a motion to dismiss the appeal or writ. Any such motion must be filed in accordance with Sections 66-2 and 66-3. A motion to dismiss an appeal or writ of error that claims a lack of jurisdiction may be filed at any time. . . ."

[3] We may take judicial notice of the court file in the prior action. See, e.g., *McCarthy* v. *Warden*, 213 Conn. 289, 293, 567 A.2d 1187 (1989) (appellate court may "take judicial notice of the court files in another suit between the parties"), cert. denied, 496 U.S. 939, 110 S. Ct. 3220, 110 L. Ed. 2d 667 (1990); *Derderian* v. *Derderian*, 3 Conn. App. 522, 524 n.4, 490 A.2d 1108 ("[a]n appellate court can take judicial notice of court files without notifying the parties"), cert. denied, 196 Conn. 811, 495 A.2d 279 (1985), and cert. denied, 196 Conn. 810, 495 A.2d 279 (1985).

[4] A property execution filed by the plaintiff in the prior action on January 19, 2018, reflects that, as of that date, $673,794 of the $2,080,185.09 judgment was paid to the plaintiff in satisfaction of the judgment. In its motion to dismiss, the plaintiff stated that the amount paid reflects the value of the stock that was formerly held by the defendant.

[5] The defendant also argued that the motion to dismiss was untimely. We observe that the motion to dismiss, challenging the subject matter jurisdiction of this court over the appeal, was brought pursuant to Practice Book § 66-8, which provides in relevant part: "A motion to dismiss an appeal or writ of error that claims a lack of jurisdiction may be filed *at any time*. . . ." (Emphasis added.) See footnote 2 of this opinion.

[6] As part of the jurisdictional argument set forth in its appellate brief, the plaintiff also relies on facts that arose subsequent to this court's denial of its motion to dismiss. Specifically, the plaintiff relies on a partial transcript of an April 27, 2018 postjudgment hearing before Judge Moore in the prior action. The plaintiff reproduced the partial transcript in the appendix to its brief. The transcript reflects that, at the hearing, the defendant's attorney sought a determination as to whether the judgment rendered against the defendant in the prior action had been satisfied in whole or in part. The plaintiff draws our attention to the portions of the transcript in which, on several occasions, the defendant's attorney stated that the defendant's stock had been taken by the plaintiff, but that it was necessary to ascertain its value for the purposes of determining whether the stock satisfied the judgment

[7] Ultimately, Judge Moore denied the defendant's motion, concluding that "the defendant presented wholly irrelevant materials and failed, miserably, to sustain his burden to prove that the judgment had been satisfied."